[No. 1076-1.    Division One—Panel 2.    December 26, 1972.]

VINCENT L. VARACALLI, *Appellant,* v. MAURICE WILLIAMS *et al., Respondents.*

D. WESLEY BUTCHER *et al., Appellants,* v. MAURICE WILLIAMS *et al., Respondents.*

*Donald G. Cohan, Beresford & Booth, Robert W. Mc-Kisson,* and *Harry B. Fay, III,* for appellants.

*Jerome L. Jager,* for respondents.

FARRIS, A.C.J.—Maurice and Eugenia Williams, his wife, sold certain unimproved real property to a third party after entering into an earnest money agreement to sell that property to D. Wesley Butcher and Joseph A. Butcher. The Butchers brought action for damages for breach of the earnest money receipt and agreement, and the broker, Vincent Varacalli, brought action to recover a real estate commission. The actions were consolidated for trial. The Butchers and Varacalli appeal from an adverse judgment.

It is not disputed that a written offer of the Butchers to purchase the property was submitted through Varacalli to the Williamses who made a counter offer by amending the purchase price. The offer was to purchase for "seventy thousand dollars." The Williamses had the agent strike the words "thousand dollars" and write above "seven thousand five hundred dollars" so that the purchase price was increased to $77,500. The Williamses initialed the change and authorized the agent to submit the counter offer which was accepted by the Butchers. The matter was placed in escrow with Escrow Services, Inc. by the real estate agent. The Williamses thereafter sold the property to a third party.

Although the purchase price was increased to $77,500, no other change was made in the earnest money agreement. It provides for a cash downpayment of $18,000 and payments

of $400 or more per month until the balance of $52,000 is paid. There was a failure to increase the balance due or to specify how the additional sum of $7,500 should be paid. The trial court concluded:

> There is no definite evidence to explain the ambiguity. Therefore, there was no meeting of the minds as to the provisions relating to down payment and terms of payment. There was no mutual mistake involved, but rather an involved situation where there was no meeting of the minds as to very essential contractual provisions. The document was not a fully integrated agreement.

Finding of fact No. 6. This conclusion of law fails to answer the question upon which the action must turn: Whether the increase in the purchase price without a corresponding adjustment in the terms of payment created a genuine ambiguity in the document so as to render the agreement incapable of enforcement.

A similar question was considered by the court in *Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316, 481 P.2d 17 (1971), which involved a lease with an option to purchase real property. Within the time specified in the contract, the lessee opted to buy the property. The lessors refused to sell arguing that

> the failure of the lease to indicate whether the sale would be cash or credit, who provides title insurance, if any, who pays the 1 per cent excise tax, whether the taxes were prorated, the date of possession, the time for performance and the disposition of encumbrances, if any, should defeat the action for specific performance.

We concluded:

> [T]he contract contains the essential elements of a cash sale. It contains a description of the property subject to sale and a method for the determination of a price which may be specifically enforced. *Richardson v. Harkness*, 59 Wash. 474, 110 P. 9 (1910).

*Valley Garage, Inc. v. Nyseth, supra* at 318. The essential elements for sale of the property are contained in the agreement here. We therefore reject the argument that the

contract is so ambiguous as to be too indefinite to be capable of performance.

The Williamses also point out that one of the conditions of the agreement was that the sale was to close prior to March 15, 1968 or May 15, 1968, if problems arose that were "beyond the control of the purchasers." They argue that there was no evidence that the Butchers were ready to close on March 15, 1968, and that no showing was made to justify an extension to May 15. They recognize that the property had been sold to a third party prior to March 15, but they argue that the Butchers did not know this. There is evidence in the record on the issue, but the trial court made no factual finding on the point. We recognize that a purchaser is not required to tender performance before initiating action if he can show that the seller during the life of his contract with the purchaser put it out of his power to perform. *Munson v. McGregor*, 49 Wash. 276, 94 P. 1085 (1908). But this does not excuse the failure of a purchaser to perform a condition precedent to the seller's obligation to perform if he had no notice of the seller's default at the time that his performance was due. *See Ross v. Harding*, 64 Wn.2d 231, 391 P.2d 526 (1964).

Varacalli, the broker, should recover the commission provided for in the earnest money agreement if he can satisfy the trial court that he prepared the contract according to instructions or that he exercised reasonable care and skill in drafting the instrument. *See Mattieligh v. Poe*, 57 Wn.2d 203, 356 P.2d 328, 94 A.L.R. 2d 464 (1960).

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

JAMES and SWANSON, JJ., concur.